Dissenting opinion filed by Circuit Judge MAYER.
RADER, Chief Judge.
The United States District Court for the District of Minnesota dismissed with prejudice a patent infringement complaint filed by Superior Industries, LLC (“Superior”) against Thor Global Enterprises Ltd. (“Thor”) in part based on claim preclusion and in part for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Superior Indus., LLC v. Thor Global Enters. Ltd., No. 10-CV-2524, 2011 WL 3100335, at *3 (D.Minn. *1290 July 22, 2011). Because Superior’s prior trademark infringement action did not arise from the same operative facts, and because Superior’s patent infringement complaint meets the pleading requirements of Form 18 of the Federal Rules of Civil Procedure, this Court reverses and remands for further proceedings. This court affirms the dismissal of Superior’s claims of indirect infringement of U.S. Patent No. 7,618,231.
I
Superior is the exclusive owner by assignment of U.S. Patent Nos. 7,284,947 (the “'947 Patent”), 7,470,101 (the “101 Patent”), and 7,618,231 (the “'231 Patent”) (collectively, the “Superior Patents”). The Superior Patents claim priority to an October 26, 2006 application and cover a “Braced Telescoping Support Strut and System.” This claimed system supports a portable conveyor assembly. Portable conveyors transport and stockpile rock, sand, grain, and other aggregate material. Superior alleges its patents claim an improved undercarriage system that enables portable conveyors to safely and stably extend to, and operate at, heights above previous conveyors. The invention improves the prior art with cross bracing between the upper and lower support beams that does not interfere with the extension or retraction of the upper support beams. Superior claims to have coined the term “fully braced” to refer to the new undercarriage. Based on an intent-to-use trademark application filed on October 3, 2007, Superior owns the registered trademark “FB” for height-adjustable bulk material belt conveyors and undercarriage assemblies (U.S. Trademark Registration No. 3,502,855).
Thor is a Canadian company that competes with Superior in the portable conveyor market. On July 12, 2007, Thor filed a U.S. patent application for an “Undercarriage for a Telescopic Frame” (the “Thor Patent Application”), which discloses a telescoping frame similar to that claimed in the Superior Patents.
On October 1, 2007, Thor issued a press release on its website describing a conveyor system with a new “PATENT-PENDING FB Undercarriage” (the “Thor Undercarriage Technology”). The press release states that the “FB (Fully Braced) Undercarriage technology ... is currently being applied to all new T15020, T150-12/15, T135-12/15 and T1705/8/10 ThorStack2™ series telescopic stackers as well as other lifting devices.” J.A. 148. The release provides no details about the selling price or other terms of sale for Thor’s telescopic stackers. Also in October 2007, Thor distributed point-of-sale displays, identical to the press release, to numerous dealers throughout the United States.
On August 4, 2009, Superior initiated a trademark infringement action in the District of Minnesota (the “2009 Trademark Action”). Superior asserted Thor infringed its registered “FB” trademark through Thor’s use of the mark in its press releases and point-of-sale displays. The 2009 Trademark Action ended in a Consent Judgment dated April 7, 2010, which permanently enjoined Thor from further use of the “FB” trademark in connection with Thor’s undercarriage assemblies or portable conveyors.
On June 21, 2010, Superior filed suit against Thor for infringement of Superi- or’s '101 and '231 Patents. Superior’s First Amended Complaint alleges that Thor “has been and is directly infringing, actively inducing others to infringe and/or contributing to the infringement of one or more claims of the '101 [and '231] Patent[s] by its unauthorized making, using, offering to sell, selling and/or importing a *1291 telescoping conveyor having the Thor Undercarriage Technology in and/or to the United States.” J.A. 112-13. The complaint alleges that Thor admitted during the 2009 Trademark Action that it had used “the mark ‘FB’ in connection with ‘multiple sales offerings to customers, dealers and distributors in the United States [for conveyor systems and/or related undercarriage systems], and sold such goods into commerce in the United States’ ” before Superior’s October 3, 2007 intent-to-use application for the “FB” mark. J.A. 112 (quoting Thor’s Answer, Affirmative Defenses and Counterclaims in the 2009 Trademark Action) (alterations in original). In April and May 2010, Superi- or purports to have questioned Thor about its current selling, offering for sale, and/or importing the Thor Undercarriage Technology into the United States. Superior alleges that, in response, it received only “evasive responses and conclusory opinions from Thor that the Thor Undercarriage Technology did not infringe Superior’s patents.” Id.
The district court dismissed Superior’s claims for infringement of the '101 Patent on the basis of claim preclusion. The district court noted that Superior “referenced the '947 Patent” in its complaint filed in the 2009 Trademark Action, and found “[t]he only reason the earlier suit did not contain patent allegations is because Superior chose not to make them.” Superior, 2011 WL 3100335, at *5. The court found “both lawsuits arise from the same nucleus of operative facts — Thor’s offering for sale its FB undercarriage technology in the United States. Both the trademark claims and the patent claims arise from and are based on the October 2007 press releases issued by Thor describing its ‘Patent-Pending FB Undercarriage Technology’ and the point of sale displays allegedly distributed by Thor to dealers throughout the United States.” Id.
As to the '231 Patent, the district court determined that claim preclusion did not apply because the '231 Patent did not issue until more than three months after Superi- or filed its complaint in the 2009 Trademark Action. Id. The district court dismissed Superior’s claim based on Rule 12(b)(6) of the Federal Rules of Civil Procedure, however, finding Superior did not state a claim for relief that is plausible on its face. Id. at *6. The court found Superi- or did not plead sufficient factual matter to support its claim that Thor sold or offered for sale infringing products in the United States after the '231 Patent issued. Id. The district court held Superior could not rely on Thor’s admission in the 2009 Trademark Action that it had sold and offered for sale the Thor Undercarriage Technology, because the admitted activities predated issuance of the '231 Patent. Id.
II
Claim preclusion is an issue of law reviewed without deference. In re Bose Corp., 476 F.3d 1331, 1334 (Fed.Cir. 2007). The law of the regional circuit — in this case the United States Court of Appeals for the Eighth Circuit — applies to the general principles of claim preclusion. See Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha, 58 F.3d 616, 618 (Fed.Cir. 1995). Federal Circuit law, however, applies to “issues of substantive patent law and certain procedural issues pertaining to patent law.” Research Corp. Techs., Inc. v. Microsoft Corp., 536 F.3d 1247, 1255 (Fed.Cir.2008). Thus, this court looks to Federal Circuit precedent to resolve underlying issues of substantive patent law, such as the operative facts involved in a claim for patent infringement. See, e.g., Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1323 (Fed.Cir.2008) (applying Feder *1292 al Circuit law to determine whether two claims for patent infringement are identical for claim preclusion purposes).
This court reviews without deference a district court’s Rule 12(b)(6) dismissal for failure to state a claim. Cambridge v. United States, 558 F.3d 1331, 1335 (Fed.Cir.2009). “The question whether a Rule 12(b)(6) motion was properly granted is a purely procedural question not pertaining to patent law, to which this court applies the rule of the regional circuit.” CoreBrace LLC v. Star Seismic LLC, 566 F.3d 1069, 1072 (Fed.Cir.2009) (quoting Gen. Mills, Inc. v. Kraft Foods Global, Inc., 487 F.3d 1368, 1373 (Fed.Cir. 2007)) (alterations omitted).
Ill
The doctrine of res judicata, more specifically referred to as claim preclusion, bars a party from bringing “repetitive suits involving the same cause of action.” Lundquist v. Rice Mem’l Hosp., 238 F.3d 975, 977 (8th Cir.2001) (citation omitted). Under Eighth Circuit law, claim preclusion “bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases.” Lane v. Peterson, 899 F.2d 737, 742 (8th Cir.1990).
Superior and Thor do not dispute that the 2009 Trademark Action involved the same parties and resulted in a final judgment on the merits entered by a court of competent jurisdiction. See Superior Indus., LLC v. Thor Global Enters. Ltd., No. 09-cv-02035 (D.Minn. Apr. 7, 2010) (Consent Judgment in the 2009 Trademark Action). Superior’s claim for patent infringement is thus barred by claim preclusion if the 2009 Trademark Action constitutes the “same cause of action.”
Two cases involve the same cause of action when they arise from the same “nucleus of operative facts” — i.e., when the same “transaction or series of transactions” forms the basis for the two suits. Lane, 899 F.2d at 742. The Eighth Circuit determines whether two claims arise from the same set of transactional facts by asking whether the facts “are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties’ expectations or business understanding or usage.” Id. (quoting Restatement (Second) of Judgments § 24 (1980)).
A claim in a second action may still be precluded even if it involves proof of some facts that were not operative for the prior action. Id. at 743. Significant differences in the necessary proof, however, may indicate that the two claims simply are not based on the same nucleus of operative fact. Id. at 743 n. 5. The Eighth Circuit has adopted the approach of the Restatement (Second) of Judgments, which is:
to see [the] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.
Id. at 743 (quoting Restatement (Second) of Judgments § 24 cmt. a (1980)). Thus, claim preclusion prevents a plaintiff from suing a second time on a new legal theory based on the same underlying conduct. *1293 Id. at 744 (holding suit for breach of fiduciary duties under federal law, and violation of federal securities and bankruptcy laws, among other legal theories, was barred by a prior suit for breach of fiduciary duties under Arkansas state laws based on same events); see also, e.g., Mills v. Des Arc Convalescent Home, 872 F.2d 823, 826-27 (8th Cir.1989) (Title VII claim barred later § 1981 claim based on same wrongful termination); Chester v. St. Louis Hous. Auth., 873 F.2d 207, 208-09 (8th Cir.1989) (procedural due process claim arising from plaintiffs demotion and resignation barred later Title VII and equal protection act claims based on same facts).
Thor and the district court emphasize that Superior “could have brought” its claim for infringement of the '101 Patent at the time it filed the 2009 Trademark Action because the patent had issued by that time. Superior, 2011 WL 3100335, at *5. Although cases frequently state that claim preclusion prevents parties “from re-litigating issues that were or could have been raised” in a prior action, see, e.g., Federated Dep’t. Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (emphasis added); Lane, 899 F.2d at 741, such statements require some additional context. Claim preclusion only applies to repetitious suits involving the same cause of action. Comm’r of Internal Revenue v. Sunnen, 333 U.S. 591, 597-98, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (explaining that in a subsequent suit on the same cause of action, parties are bound by matters that could have been raised in the prior litigation, but in a subsequent suit on a different cause of action, parties are free to litigate points which might have been tendered in the first suit); Restatement (Second) of Judgments § 24 cmt. a (1980) (“ ‘Claim,’ in the context of res judicata, has never been broader than the transaction to which it related”); Lane, 899 F.2d at 742 (holding claim preclusion requires the “same cause of action” to be involved in both suits). Thus, in discussions of claim preclusion, “the phrase ‘claims that were raised or could have been raised,’ refers to legal theories arising out of the same transactional nucleus of facts.” Hells Canyon Pres. Council v. U.S. Forest Serv., 403 F.3d 683, 686 n. 2 (9th Cir.2005).
Thus, claim preclusion does not arise merely because the plaintiff was aware of independent facts that gave rise to a separate cause of action against the defendant at the time it brought suit. Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1325-26 (Fed.Cir.2008). In Acumed, this court reversed a decision finding a patent infringement claim precluded where the patentee previously sued the defendant for infringement of the same patent, but on a different product. Id. at 1326. At the time of the first suit, the record in Acumed shows that the patentee knew that the defendant was selling both products in the United States. Nonetheless, this did not preclude the second suit because it arose from different transactional facts—namely, the sale of a different product. Id. at 1325. Thor has not cited any Eighth Circuit cases that suggest claim preclusion ever applies to bar litigation of a claim that arises from a different transaction or series of transactions than was at issue in a prior litigation between the same parties.
In this case, the 2009 Trademark Action does not preclude Superior’s patent infringement claim because the two claims arise from clearly separate transactions. In other words, these separate cases under separate laws do not constitute the same cause of action. The district court erred in finding that “both lawsuits arise from the same nucleus of operative facts—Thor’s offering for sale its FB undercarriage *1294 technology in the United States.” Superi- or, 2011 WL 3100335, at *5. Superior’s trademark claims arose from Thor’s use of the FB mark in advertising — not from actual sales or offers for sale of the Thor Undercarriage Technology in the United States. Stated in other terms, Superior’s patent infringement claim arises from sales, offers to sell, or importation of goods that allegedly infringe the '101 Patent— not from the advertising or use of the FB mark at issue in the 2009 Trademark Action.
A federal trademark infringement claim involves the defendant’s use of the plaintiffs registered mark “in connection with the sale, offering for sale, distribution, or advertising of any goods or services” in a manner “likely to cause confusion, to cause mistake, or to deceive.” 15 U.S.C. § 1114 (emphasis added); see also Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1363 (Fed.Cir.2000). Superior’s trademark claims were not premised on actual sales or offers for sale of conveyor or undercarriage systems in the United States, much less on sales of the specific technology covered by the Superior Patents. Superi- or specifically alleged in the 2009 Trademark Action — and Thor admitted — that Thor had not sold conveyor or undercarriage systems bearing the “FB” mark in the United States. Thus, no “sale” of “goods or services” could have provided the statutory basis for a trademark infringement claim under 15 U.S.C. § 1114. Instead, the series of transactions that gave rise to the 2009 Trademark Action was Thor’s use of the FB mark in the point-of-sale displays and press releases advertising Thor’s portable conveyor systems.
A claim for patent infringement, by contrast, arises when an unauthorized party “makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent ...” 35 U.S.C. § 271(a). An “offer for sale” sufficient to give rise to liability for patent infringement must meet the traditional contract law definition of that term. Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1255 (Fed.Cir. 2000). Thus, “the defendant must communicate a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.” MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1376 (Fed.Cir.2005) (internal quotations and alterations omitted). Communications that describe the allegedly infringing materials but “do not contain any price terms ... on their face ... cannot be construed as an ‘offer’ which [the offeree] could make into a binding contract by simple acceptance.” Id.
Thor’s advertising at issue in the 2009 Trademark Action did not constitute an “offer for sale” for purposes of patent infringement because it contains no price terms. See J.A. 148-50. It cannot be the “operative fact” that gives rise to Superi- or’s patent infringement claim. To be sure, Superior’s complaint for patent infringement refers to the same advertisements for the Thor Undercarriage Technology that were at issue in the 2009 Trademark Action, as well as to Thor’s admissions in that action that it sold such undercarriage systems in the United States before Superior’s use of the FB trademark (and prior to issuance of the '101 Patent). While these are not the operative facts that give rise to Superior’s claim for patent infringement, they may support the inference that, after Superior’s '101 and '231 Patents issued, Thor continued to sell, offer for sale, or import into *1295 the United States the allegedly infringing goods.
In sum, Superior’s claims for trademark infringement and patent infringement constitute separate causes of action. Because the district court erred in concluding that claim preclusion barred Superior’s claim for infringement of the '101 Patent, this court reverses and remands for further proceedings.
IV
The district court dismissed Superior’s claim for infringement of the '231 Patent under Rule 12(b)(6), finding Superior failed to plead sufficient factual matter to state a claim for relief that is plausible on its face. Superior, 2011 WL 3100335, at *6; see Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir.2010).
In a complaint for patent infringement under § 271(a), Form 18 of the Federal Rules of Civil Procedure provides the pleading standard. In re Bill of Lading Transmission & Processing Sys. Patent Litig. (R + L Carriers, Inc. v. DriverTech LLC), 681 F.3d 1323, 1334 (Fed.Cir.2012). Form 18 requires “(1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent ‘by making, selling, and using [the device] embodying the patent’; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.” Id. (quoting McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1357 (Fed.Cir.2007) (alteration in original)). Although the parties do not discuss the Form 18 pleading standard, this court acknowledges that standard to review the dismissal. Id.
Superior’s First Amended Complaint (1) alleges jurisdiction, J.A. 109 ¶¶ 3-5; (2) states that Superior owns the '101 and '231 Patents, J.A. 110-11 ¶¶ 8-10; (3) states that Thor is infringing the '101 and '231 patents by selling, offering to sell, or importing “a telescoping conveyor having the Thor Undercarriage Technology” into the United States, J.A. 112-13, ¶¶ 17, 22, and Thor’s press releases attached to the complaint provide model numbers for the accused products, J.A. 148-150; (4) gives Thor notice of its infringement, see 35 U.S.C. § 287(a); and (5) includes a prayer for relief in the form of an injunction and damages, J.A. 114. In addition, Superior’s First Amended Compliant indicates that Thor also received written notice of its alleged infringement through communications from Superior in 2010. J.A. 112 ¶ 15 (“Subsequent communications in April and May 2010 by and between Superior and Thor to confirm whether Thor was selling, offering for sale and/or importing Thor Undercarriage Technology into the United States were met with evasive responses and conelusory opinions from Thor that the Thor Undercarriage Technology did not infringe Superior’s patents.”) (emphasis added). This correspondence also served to give Thor notice of Superior’s claim of infringement. The complaint therefore adequately pleads direct infringement of the '101 and '231 Patents. This allegation contains each element of a claim for direct patent infringement.
The complaint also alleges induced and contributory infringement of the '101 and '231 Patents. Form 18 does not determine the sufficiency of pleading for claims of indirect infringement. R + L Carriers, 681 F.3d at 1336. Rather, the pleading requirements set forth in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) apply to such claims. Id. This court finds Superior’s *1296 complaint falls far short of pleading facts necessary to state a plausible claim for either induced or contributory infringement.
Superior does not allege that the accused products are “especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use” as required by 35 U.S.C. § 271(c). Similarly, Superior does not allege any facts to support a reasonable inference that Thor specifically intended to induce infringement of the '231 Patent or that it knew it had induced acts that constitute infringement. See R + L Carriers, 681 F.3d at 1339. This court therefore affirms the dismissal of Superior’s claims of indirect infringement under 35 U.S.C. § 271(b) and (c).
Because Superior’s First Amended Complaint meets the pleading standard of Form 18, this court reverses the district court’s dismissal of Superior’s claims for direct infringement of the '231 Patent, but affirms the dismissal of Superior’s claims for indirect infringement.
V
Accordingly, the judgment of the district court is affirmed-in-part, reversed-in-part, and remanded.
AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED
Costs
Costs to Superior.